# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

**TRANSMITTAL SHEET**
(Notice of Appellate Action)

Date Notice filed: 7-26-2016

Style of Case: USA vs. ARTERBURY

Appellant: USA

District Court No: 15-CR-182-JHP

Tenth Circuit Case No:

| | |
|---|---|
| [ ] Amended NOA | [ ] Cross Appeal |
| [ ] Interlocutory Appeal | [ ] Successive Petition (2254 or 2255) (no fee) |

Notice of appeal is enclosed to all parties (except to appellant in civil cases); Notice of Appeal, docket entries and district court order are enclosed to 10th Circuit Court of Appeals:

District Court Judge: James H. Payne, U.S. District Judge

### APPEAL FILED BY PRO SE

| | |
|---|---|
| Appeal Fee Paid | [ ] |
| IFP Granted | [ ] |
| Motion for IFP on Appeal Form Mailed/Given | [ ] |
| Motion for IFP on Appeal Filed | [ ] |

### APPEAL FILED BY COUNSEL

| | |
|---|---|
| Appeal Fee Paid | [ ] |
| IFP Granted | [ ] |
| Motion for IFP on Appeal Form Made Available | [ ] |
| Motion for IFP on Appeal Filed | [ ] |
| Court Appointed Counsel (CJA/FPD) | [ ] |
| USA | [x] |

Signature of: S. Cotner, Deputy Clerk     July 27, 2016     Phone: (918) 699-4700

APPEAL,LC−2,RELEASED

# U.S. District Court
## U.S. District Court for the Northern District of Oklahoma (Tulsa)
## CRIMINAL DOCKET FOR CASE #: 4:15−cr−00182−JHP All Defendants

Case title: USA v. Arterbury
Magistrate judge case number:  4:15−mj−00198−TLW

Date Filed: 12/07/2015

Assigned to: Judge James H Payne

**Defendant (1)**

**Scott Fredrick Arterbury**                     represented by     **Julie Katherine Linnen**
Federal Public Defender's Office (Tulsa)
1 W 3rd St STE 1225
TULSA, OK 74103
918−581−7656
Fax: 918−581−7630
Email: julie_linnen@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community
Defender Appointment*

**William Patrick Widell , Jr**
Federal Public Defender's Office (Tulsa)
1 W 3rd St STE 1225
TULSA, OK 74103
918−581−7656
Fax: 918−581−7630
Email: william_widell@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community
Defender Appointment*

**Pending Counts**                                         **Disposition**

18 USC 2252(a)(4)(B) and
2252(b)(2): Possession of Child
Pornography
(1)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |

None

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |

18:2252(a)(4)(B): Possession of
Child Pornography

**Plaintiff**

| **USA** | represented by | **Andrew J Hofland** |

represented by **Andrew J Hofland**
United States Attorney's Office (Tulsa)
110 W 7TH ST STE 300
TULSA, OK 74119–1013
918–382–2797
Fax: 918–382–7938
Email: andrew.hofland@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*
*(local,state,federal)*

| Date Filed | # | Page | Docket Text |
| --- | --- | --- | --- |
| 11/10/2015 | 1 | | COMPLAINT approved by Magistrate Judge T Lane Wilson by USA as to Scott Fredrick Arterbury (1) (kjp, Dpty Clk) [4:15−mj−00198−TLW] (Entered: 11/10/2015) |
| 11/10/2015 | 2 | | WARRANT Issued by Magistrate Judge T Lane Wilson as to Scott Fredrick Arterbury (kjp, Dpty Clk) [4:15−mj−00198−TLW] (Entered: 11/10/2015) Contains One or More Restricted PDFs |
| 11/12/2015 | 3 | | MOTION for Detention by USA as to Scott Fredrick Arterbury (Hofland, Andrew) [4:15−mj−00198−TLW] (Entered: 11/12/2015) |
| 11/12/2015 | 4 | | MOTION for Hearing (Re: 3 MOTION for Detention ) by USA as to Scott Fredrick Arterbury (Hofland, Andrew) [4:15−mj−00198−TLW] (Entered: 11/12/2015) |
| 11/12/2015 | 5 | | MINUTES of Proceedings – held before Magistrate Judge T Lane Wilson: Initial Appearance held on 11/12/2015 , appointing FPD attorney Julie Katherine Linnen for Scott Fredrick Arterbury, ruling on motion(s)/document(s): #4 Granted, setting/resetting deadline(s)/hearing(s): ( Detention Hearing set for 11/16/2015 at 02:00 PM before Magistrate Judge Paul J Cleary) as to Scott Fredrick Arterbury (Re: 4 MOTION for Hearing ) (Court Reporter: C1) (kjp, Dpty Clk) [4:15−mj−00198−TLW] (Entered: |

| | | | |
|---|---|---|---|
| | | | 11/12/2015) |
| 11/12/2015 | 6 | | ORDER by Magistrate Judge T Lane Wilson , appointing FPD attorney as to Scott Fredrick Arterbury (kjp, Dpty Clk) [4:15−mj−00198−TLW] (Entered: 11/12/2015) |
| 11/12/2015 | 7 | | WAIVER of Preliminary Examination or Hearing by Scott Fredrick Arterbury (kjp, Dpty Clk) [4:15−mj−00198−TLW] (Entered: 11/12/2015) |
| 11/12/2015 | 8 | | ORDER by Magistrate Judge T Lane Wilson *setting hearing and*, ordering defendant be detained as to Scott Fredrick Arterbury (kjp, Dpty Clk) [4:15−mj−00198−TLW] (Entered: 11/12/2015) |
| 11/13/2015 | 9 | | WARRANT Returned Executed as to Scott Fredrick Arterbury (sdc, Dpty Clk) [4:15−mj−00198−TLW] (Entered: 11/13/2015) |
| 11/16/2015 | 10 | | MINUTES of Proceedings – held before Magistrate Judge Paul J Cleary: Detention Hearing held on 11/16/2015 , ruling on motion(s)/document(s): #3 Denied, setting/resetting bond, striking/terminating deadline(s)/hearing(s) as to Scott Fredrick Arterbury (Re: 3 MOTION for Detention ) (Court Reporter: C1) (kjp, Dpty Clk) [4:15−mj−00198−TLW] (Entered: 11/16/2015) |
| 11/16/2015 | 11 | | ORDER by Magistrate Judge Paul J Cleary , setting conditions of release as to Scott Fredrick Arterbury (kjp, Dpty Clk) [4:15−mj−00198−TLW] (Entered: 11/16/2015) |
| 11/16/2015 | 12 | | BOND approved by Magistrate Judge Paul J Cleary as to Scott Fredrick Arterbury (kjp, Dpty Clk) [4:15−mj−00198−TLW] (Entered: 11/16/2015) |
| 12/07/2015 | 14 | | SEALED INDICTMENT by USA as to Scott Fredrick Arterbury (1) count(s) 1 (pll, Dpty Clk) (Entered: 12/08/2015) |
| 12/07/2015 | | | ***Deadline(s)/Hearing(s) set/reset: Arraignment set for 12/15/2015 at 02:00 PM before Magistrate Judge Frank H McCarthy (see document number 15 ) as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 12/09/2015) |
| 12/08/2015 | 16 | | MINUTE ORDER by Judge James H Payne *re: discovery* as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 12/08/2015) |
| 12/08/2015 | | | ***Remark: *mailed order to parties this date* (Re: 16 Order ) as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 12/08/2015) |
| 12/08/2015 | 17 | | SCHEDULING ORDER by Judge James H Payne , setting/resetting scheduling order date(s): ( Motions due by 12/18/2015, Pretrial Conference set for 12/22/2015 at 01:30 PM before Judge James H Payne, Responses due by 12/28/2015, Jury Instructions, Voir Dire &Trial Briefs due by 1/11/2016, Jury Trial set for 1/20/2016 at 09:30 AM before Judge James H Payne) as to Scott Fredrick Arterbury (sc, Dpty Clk) (Entered: 12/08/2015) |
| 12/15/2015 | | | ***Case Unsealed as to Scott Fredrick Arterbury (tjc, Dpty Clk) (Entered: 12/15/2015) |
| 12/15/2015 | 18 | | MINUTES of Proceedings – held before Magistrate Judge Frank H McCarthy: Arraignment held on 12/15/2015 , defendant remain/released on conditions, striking/terminating deadline(s)/hearing(s) as to Scott Fredrick Arterbury (Court Reporter: C1) (tjc, Dpty Clk) (Entered: 12/15/2015) |

| 12/18/2015 | 19 | | Unopposed MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) by Scott Fredrick Arterbury (Linnen, Julie) (Entered: 12/18/2015) |
| 12/21/2015 | 20 | | SCHEDULING ORDER by Judge James H Payne *(Amended)*, setting/resetting scheduling order date(s): ( Motions due by 1/4/2016, Responses due by 1/15/2016, Pretrial Conference set for 1/27/2016 at 01:30 PM before Judge James H Payne, Jury Instructions, Voir Dire &Trial Briefs due by 2/5/2016, Jury Trial set for 2/16/2016 at 09:30 AM before Judge James H Payne) as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 12/21/2015) |
| 01/25/2016 | 21 | | Second MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) by Scott Fredrick Arterbury (Linnen, Julie) (Entered: 01/25/2016) |
| 01/26/2016 | 22 | | WAIVER of Speedy Trial by Scott Fredrick Arterbury (Linnen, Julie) (Entered: 01/26/2016) |
| 01/26/2016 | 23 | | ORDER by Judge James H Payne , ruling on motion(s)/document(s): #21 Granted, setting/resetting scheduling order date(s): ( Motions due by 2/1/2016, Responses due by 2/11/2016, Pretrial Conference set for 2/24/2016 at 01:30 PM before Judge James H Payne, Jury Instructions, Voir Dire &Trial Briefs due by 3/4/2016, Jury Trial set for 3/15/2016 at 09:30 AM before Judge James H Payne) (Re: 21 Second MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 01/26/2016) |
| 01/28/2016 | 24 | | SEALED MOTION (Hofland, Andrew) (Entered: 01/28/2016) Contains One or More Restricted PDFs |
| 02/10/2016 | 25 | | SEALED ORDER by Judge James H Payne , ruling on motion(s)/document(s): #24 Granted (Re: 24 SEALED MOTION ) as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 02/10/2016) Contains One or More Restricted PDFs |
| 02/10/2016 | 26 | | NOTICE of Docket Entry Modification; Error: Order should have been sealed; Correction: PDF Sealed as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 02/10/2016) |
| 02/24/2016 | 27 | | MINUTES of Proceedings – held before Judge James H Payne: Pretrial Conference held on 2/24/2016 , striking/terminating deadline(s)/hearing(s) as to Scott Fredrick Arterbury (Court Reporter: Ken Sidwell) (pll, Dpty Clk) (Entered: 02/24/2016) |
| 02/25/2016 | 28 | | Unopposed MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) by Scott Fredrick Arterbury (Linnen, Julie) (Entered: 02/25/2016) |
| 02/29/2016 | 29 | | ORDER by Judge James H Payne , ruling on motion(s)/document(s): #28 Granted, setting/resetting scheduling order date(s): ( Motions due by 3/9/2016, Responses due by 3/18/2016, Pretrial Conference set for 3/23/2016 at 01:30 PM before Judge James H Payne, Jury Instructions, Voir Dire &Trial Briefs due by 4/8/2016, Jury Trial set for 4/19/2016 at 09:30 AM before Judge James H Payne) (Re: 28 Unopposed MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 02/29/2016) |
| 03/08/2016 | 30 | | |

| | | | |
|---|---|---|---|
| | | | Unopposed MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) by Scott Fredrick Arterbury (Linnen, Julie) (Entered: 03/08/2016) |
| 03/09/2016 | 31 | | MINUTE ORDER by Judge James H Payne : *Granting defendant's motion to extend motion deadline*, ruling on motion(s)/document(s): #30 Granted, setting/resetting deadline(s)/hearing(s): ( Motions due by 3/11/2016, Responses due by 3/21/2016) (Re: 30 Unopposed MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Scott Fredrick Arterbury (This entry is the Official Order of the Court. No document is attached.) (pll, Dpty Clk) (Entered: 03/09/2016) |
| 03/11/2016 | 32 | | ATTORNEY APPEARANCE (FPD) by William Patrick Widell, Jr on behalf of Scott Fredrick Arterbury [Note: Attorney William Patrick Widell, Jr added to party Scott Fredrick Arterbury(pty:dft).] (Widell, William) (Entered: 03/11/2016) |
| 03/11/2016 | 33 | | SEALED MOTION (Widell, William) (Entered: 03/11/2016) Contains One or More Restricted PDFs |
| 03/22/2016 | 34 | | SEALED DOCUMEMT (Hofland, Andrew) Modified on 3/23/2016 to change text to reflect correct event (sac, Dpty Clk). (Entered: 03/22/2016) Contains One or More Restricted PDFs |
| 03/23/2016 | 35 | | MINUTES of Proceedings – held before Judge James H Payne: Pretrial Conference held on 3/23/2016 , referring motion(s) to Magistrate Cleary, striking/terminating deadline(s)/hearing(s) as to Scott Fredrick Arterbury (Re: 33 SEALED MOTION ) (Court Reporter: Ken Sidwell) (pll, Dpty Clk) (Entered: 03/23/2016) |
| 04/06/2016 | 36 | | MINUTE ORDER by Magistrate Judge Paul J Cleary *setting hearing to be held in Courtroom #2, Third Floor*, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 4/19/2016 at 02:00 PM before Magistrate Judge Paul J Cleary) (Re: 33 SEALED MOTION ) as to Scott Fredrick Arterbury (This entry is the Official Order of the Court. No document is attached.) (kjp, Dpty Clk) (Entered: 04/06/2016) |
| 04/08/2016 | 37 | | MINUTE ORDER by Judge James H Payne : *Due to the pending motion to suppress*, setting/resetting scheduling order date(s): ( Pretrial Conference set for 4/26/2016 at 01:30 PM before Judge James H Payne, Jury Instructions, Voir Dire &Trial Briefs due by 5/6/2016, Jury Trial set for 5/17/2016 at 09:30 AM before Judge James H Payne) as to Scott Fredrick Arterbury (This entry is the Official Order of the Court. No document is attached.) (pll, Dpty Clk) (Entered: 04/08/2016) |
| 04/13/2016 | 38 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) (Re: 33 SEALED MOTION, 34 SEALED MOTION ) by USA as to Scott Fredrick Arterbury (Hofland, Andrew) (Entered: 04/13/2016) |
| 04/13/2016 | 39 | | MINUTE ORDER by Magistrate Judge Paul J Cleary *Rescheduling hearing on Motion to Suppress (# 33 )*, ruling on motion(s)/document(s): #38 Granted, setting/resetting deadline(s)/hearing(s): *To be held in Courtroom #2, Third Floor* ( Motion Hearing set for 4/25/2016 at 09:30 AM before Magistrate Judge Paul J Cleary) (Re: 38 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Scott Fredrick Arterbury (This entry is the Official Order of the Court. No document is attached.) (kjp, Dpty Clk) |

| | | | Modified on 4/19/2016 to change document number of UROM (sac, Dpty Clk). (Entered: 04/13/2016) |
|---|---|---|---|
| 04/22/2016 | 40 | | MINUTE ORDER by Magistrate Judge Paul J Cleary *at the hearing set for Monday, April 25, 2016, the parties should be prepared to discuss the implication of the recent decision in U.S. v. Levin, 2016 WL 1589824 (D.Mass. April 20, 2016).* as to Scott Fredrick Arterbury (This entry is the Official Order of the Court. No document is attached.) (sdc, Dpty Clk) (Entered: 04/22/2016) |
| 04/25/2016 | 41 | | MINUTES of Proceedings – held before Magistrate Judge Paul J Cleary: Motion Hearing held on 4/25/2016 , striking/terminating deadline(s)/hearing(s) as to Scott Fredrick Arterbury (Re: 33 SEALED MOTION ) (Court Reporter: C2) (sdc, Dpty Clk) (Entered: 04/25/2016) |
| 04/25/2016 | 42 | 12 | REPORT AND RECOMMENDATION by Magistrate Judge Paul J Cleary (Re: 33 SEALED MOTION ) as to Scott Fredrick Arterbury (sdc, Dpty Clk) (Entered: 04/25/2016) |
| 04/26/2016 | 43 | | MINUTES of Proceedings – held before Judge James H Payne: Pretrial Conference held on 4/26/2016 *, remains set for trial*, striking/terminating deadline(s)/hearing(s) as to Scott Fredrick Arterbury (Court Reporter: Brian Neil) (pll, Dpty Clk) (Entered: 04/26/2016) |
| 05/02/2016 | 44 | | OBJECTION to Report and Recommendation (Re: 42 REPORT AND RECOMMENDATION by Magistrate Judge Paul J Cleary ) by USA as to Scott Fredrick Arterbury (Hofland, Andrew) (Entered: 05/02/2016) |
| 05/05/2016 | 45 | | RESPONSE (Re: 42 REPORT AND RECOMMENDATION by Magistrate Judge Paul J Cleary , 44 Objection to Report and Recommendation ) by Scott Fredrick Arterbury (Widell, William) (Entered: 05/05/2016) |
| 05/12/2016 | 46 | | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 4/25/2016 before Magistrate Judge Paul J Cleary (Court Reporter: Brian Neil) (Pages: 1–68). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 41 Minutes of Motion Hearing,, Striking/Terminating Deadline(s)/Hearing(s), ) as to Scott Fredrick Arterbury (bpn, CrtRptr) (Entered: 05/12/2016) Contains One or More Restricted PDFs |
| 05/12/2016 | 47 | 11 | ORDER by Judge James H Payne , ruling on motion(s)/document(s): #33 granted, #42 accepted (Re: 42 REPORT AND RECOMMENDATION by Magistrate Judge Paul J Cleary , 33 SEALED MOTION ) as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 05/12/2016) |
| 05/13/2016 | 48 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) (Re: 47 Order,, Ruling on Motion(s)/Document(s), ) by USA as to Scott Fredrick Arterbury (Hofland, Andrew) (Entered: 05/13/2016) |
| 05/16/2016 | 49 | | RESPONSE in Support of Motion (Re: 48 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) by Scott Fredrick Arterbury |

| | | | |
|---|---|---|---|
| | | | (Widell, William) (Entered: 05/16/2016) |
| 05/16/2016 | 50 | | ORDER by Judge James H Payne , ruling on motion(s)/document(s): #48 Granted, setting/resetting scheduling order date(s): ( Jury Instructions, Voir Dire &Trial Briefs due by 6/13/2016, Jury Trial set for 6/21/2016 at 09:30 AM before Judge James H Payne) (Re: 48 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 05/16/2016) |
| 06/14/2016 | 51 | 41 | MOTION to Reconsider (Re: 47 Order,, Ruling on Motion(s)/Document(s), ) by USA as to Scott Fredrick Arterbury (Hofland, Andrew) (Entered: 06/14/2016) |
| 06/16/2016 | 52 | | MINUTE ORDER by Judge James H Payne *: Striking the jury trial pending ruling on the motion to reconsider*, striking/terminating deadline(s)/hearing(s) as to Scott Fredrick Arterbury (This entry is the Official Order of the Court. No document is attached.) (pll, Dpty Clk) (Entered: 06/16/2016) |
| 06/21/2016 | 53 | | RESPONSE in Opposition to Motion (Re: 51 MOTION to Reconsider ) by Scott Fredrick Arterbury (Widell, William) (Entered: 06/21/2016) |
| 07/01/2016 | 54 | | RESPONSE in Opposition to Motion (Re: 51 MOTION to Reconsider ) by Scott Fredrick Arterbury (Widell, William) (Entered: 07/01/2016) |
| 07/18/2016 | 55 | 58 | SCHEDULING ORDER by Judge James H Payne , ruling on motion(s)/document(s): #51 Denied, setting/resetting scheduling order date(s): ( Pretrial Conference set for 7/27/2016 at 01:30 PM before Judge James H Payne, Jury Instructions, Voir Dire &Trial Briefs due by 8/8/2016, Jury Trial set for 8/16/2016 at 09:30 AM before Judge James H Payne) (Re: 51 MOTION to Reconsider ) as to Scott Fredrick Arterbury (pll, Dpty Clk) (Entered: 07/18/2016) |
| 07/26/2016 | 56 | 8 | NOTICE OF APPEAL to Circuit Court (Interlocutory) (Re: 55 Scheduling Order, Ruling on Motion(s)/Document(s), Setting/Resetting Scheduling Order Date(s),,, 47 Order, Ruling on Motion(s)/Document(s),, ) by USA as to Scott Fredrick Arterbury (Hofland, Andrew) (Entered: 07/26/2016) |
| 07/27/2016 | 57 | | MINUTE ORDER by Judge James H Payne *: Striking the pretrial and jury trial pending ruling on the interlocutory appeal*, striking/terminating deadline(s)/hearing(s) as to Scott Fredrick Arterbury (This entry is the Official Order of the Court. No document is attached.) (pll, Dpty Clk) (Entered: 07/27/2016) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-CR-182-JHP |
| | ) |
| SCOTT FREDRICK ARTERBURY, | ) |
| | ) |
| Defendant. | ) |

## NOTICE OF APPEAL

The United States of America, by and through counsel, Danny C. Williams, Sr., United States Attorney for the Northern District of Oklahoma, and Andrew J. Hofland, Assistant United States Attorney, hereby provides notice, pursuant to 18 U.S.C. § 3731, that it appeals to the United States Court of Appeals for the Tenth Circuit from the Order of this Court, entered May 12, 2016 (Dkt. # 47), affirming and adopting the Report and Recommendation of the United States Magistrate Judge granting the motion to suppress, and the Order of this Court entered July 18, 2016 (Dkt. # 55), denying the United States' Motion to Reconsider (Dkt. # 51).

The filing of a timely notice of appeal under § 3731 divests the trial court of jurisdiction and confers jurisdiction on the Court of Appeals. *United States v. Todd*, 446 F.3d 1062, 1069 (10th Cir. 2006). Accordingly, all district court proceedings in this matter should be stayed pending the resolution of his appeal.

Respectfully submitted,

DANNY C. WILLIAMS, SR.
United States Attorney


 */s/ Andrew J. Hofland*
Andrew J. Hofland, WI Bar #1065503
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1013
(918) 382-2700
andrew.hofland@usdoj.gov

2

## CERTIFICATION OF APPEAL

The United States Attorney certifies that the appeal is not taken for purpose of delay and the evidence is a substantial proof of a fact material in the proceeding.

Respectfully submitted,

_/s/ Danny C. Williams, Sr._
DANNY C. WILLIAMS, SR.
UNITED STATES ATTORNEY
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1013
(918) 382-2700

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July, 2016, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

William Widell
_Counsel for Defendant_

_/s/ Andrew J. Hofland_
Andrew J. Hofland
Assistant United States Attorney

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-CR-182-JHP |
| | ) | |
| SCOTT FREDRICK ARTERBURY | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING AND ADOPTING THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

On April 25, 2016 the United States Magistrate Judge entered a Report and Recommendation (Doc. No. 42) regarding Defendant's Motion to Suppress Evidence Seized from Residence (Doc. No. 33). The Magistrate Judge recommended that Defendant's Motion to Suppress be granted.

On May 2, 2016, the United States timely filed its objections to the Magistrate Judge's Report and Recommendation (Doc. No. 44), to which the Defendant responded (Doc. No. 45).

Upon full consideration of the entire record and the issues presented therein, this Court finds and orders that the Report and Recommendation entered by the United States Magistrate Judge on April 25, 2016, is supported by the record and is **AFFIRMED** and **ADOPTED** by this Court as its Findings and Order. Therefore the Defendant's Motion to Suppress Evidence Seized from Residence is **GRANTED**.

The case remains set for jury trial on Tuesday, May 17, 2016 at 9:30 am.

James H. Payne
United States District Judge
Northern District of Oklahoma

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 15-CR-182-JHP |
| | ) |
| SCOTT FREDRICK ARTERBURY, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Before the Court is the Motion to Suppress Evidence Seized from Residence ("Motion to Suppress") and Request for an Evidentiary Hearing of Defendant Scott Fredrick Arterbury ("Arterbury"). [Dkt. No. 33]. On March 23, 2016, the matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation on the Motion to Suppress. [Dkt. No. 35]. The Motion for hearing has been **GRANTED**, and a hearing conducted on April 25, 2016. After considering the submissions of the parties and the arguments of counsel, the undersigned makes the following findings and recommendation to the District Court.

### I.
### FACTUAL BACKGROUND – THE "DARK NET" OR TOR

This case involves what is known as the "The Dark Net," the "Tor Network" or "Tor" for short.[1] "Tor is an open-source tool that aims to provide

---

[1] The Dark Net generally refers to "an area of the Internet only accessible by using an encryption tool called The Onion Router (Tor). Tor is a tool aimed at those desiring privacy online, although frequently attracting those with criminal intentions." Gareth Owen and Nick Savage, "The Tor Dark Net", at 1

anonymity and privacy to those using the Internet.  It prevents someone who is observing the user from identifying which sites they are visiting and it prevents sites from identifying the user.  Some users value Tor's anonymity because it makes it difficult for governments to censor sites or content that may be hosted elsewhere in the world."  Owen and Savage, at 1.  An individual living under a repressive government such as North Korea, for example, might make use of Tor to access or post certain information while avoiding government surveillance.  However, after analyzing Tor Dark net sites over a six-month period, Owen and Savage found that "the majority of sites were criminally oriented, with drug marketplaces featuring prominently.  Notably, however, it was found that sites hosting child abuse imagery were the most frequently requested."  *Id.*

The Tor network is designed to route communications through multiple computers, protecting the confidentiality of Internet Protocol ("IP") addresses and other identifying information.  *See*, Keith D. Watson, *The Tor Network:  A Global Inquiry into the Legal Status of Anonymity Networks*, 11 Wash. U. Global Stud. L. Rev. 715 (2012) (hereafter, "Watson").  *See, for example*, *U.S. v. Frater*, 2016 WL 795839, *3 (D. Ariz. March 1, 2016).

> Tor allows users to send data over the Internet anonymously by shielding the source's location. This is accomplished by a complex encryption network that dissociates Internet communication from its source's IP address. Tor achieves user anonymity through so-called "onion routing," which bounces all communications routed through the Tor network to various different "nodes" before delivering them to their destination. These "nodes" are proxy

[Centre for International Governance Innovation and Royal Institute of International Affairs, September 2015) (hereafter, "Owen & Savage").

servers scattered across the globe. Tor users connect to the network by first pulling in a list of nodes from a directory server. The user's computer then accesses the Tor network through a random node. The user's information is then routed through a random series of relay nodes before finally routing to an exit node, which sends the user's information to the actual Internet. What is significant about the Tor network is that each node communicates only with the nodes immediately preceding and following it in the chain. Therefore, the user's computer has direct contact with only the first node in the chain, and the actual Internet communicates only with the exit node. The entry node does not know the ultimate destination of the data, and the exit node is unaware of the data's origin. Because exit nodes are the only nodes that communicate directly with the public Internet, any traffic routed through the Tor network is traceable only to the exit node. Each communication is encrypted in a new layer of code before passing to the next node. The communication is eventually ensconced in several layers of code, which are then "peeled away" by the exit node, hence the onion metaphor.

Thus, Computer A submits data through the Tor network, the communication will pass through the network and exit onto the actual Internet through the exit node, Computer B. Any data sent by Computer A will appear to anyone tracing the communication as if it has come from Computer B. This essentially allows the user of Computer A to surf the Internet with complete anonymity, assuming the user never submits any information that is linked to her identity, such as accessing her standard e-mail account.

Watson, at 721-23.

To combat illegal activity using the Tor network, the Government has developed so-called "Trojan horse devices." These may include: "data extraction software, network investigative technique, port reader, harvesting program, remote search, CIPAV for Computer and Internet Protocol Address Verifier, or IPAV for Internet Protocol Address Verifier." Brian L. Owsley, *Beware of Government Agents Bearing Trojan Horses*, 48 Akron L. Rev. 315, 316 (2015). In the instant case, the parties have referred to the warrant issued by the U.S. magistrate judge in the Eastern District of Virginia as a Network

Investigative Technique ("NIT") warrant, and the Court will adopt that
terminology.

Once approved, the NIT is installed on the target Website. "Once
installed on Website A, each time a user accessed any page of Website A,
the NIT sent one or more communications to the user's computer which
caused the receiving computer to deliver data to a computer controlled
by the FBI, which would help identify the computer which was accessing
Website A." *U.S. v. Pierce*, 2014 WL 5173035, *3 (D.Neb. Oct. 14, 2014).
In some cases, the Government has even activated a target computer's
built-in camera to take photographs of the persons using that computer
and send the photos back to the Government. *E.g.*, *In re Warrant to
Search a Target Computer at Premises Unknown*, 958 F. Supp. 2d 753,
759 (S.D. Tex. 2013).

The critical point is that without the use of such techniques as NIT,
agents seeking to track a Tor user to his home computer will not be able to
take that pursuit beyond the exit node from which the Tor user accessed the
regular Internet.[2] NIT allows the Government to surreptitiously send a message
back through the Tor network to the home computer directing it to provide
information from which the user may be identified.

---

[2]      *See for example*, the Affidavit of Douglas Macfarlane offered in support of
the Warrant Application in the Eastern District of Virginia.  [Dkt. No. 34-1].
Macfarlane states that because of the Tor Network, "traditional IP identification
techniques are not viable."  [*Id.*, at ¶ 8].  "An exit node is the last computer
through which a user's communications were routed.  There is no practical way
to trace the user's actual IP back through that Tor exit node IP."  [*Id.*].

## II.
## FACTUAL BACKGROUND OF THIS CASE

The Government obtained evidence regarding Arterbury's alleged criminal

conduct through a multi-step process that began in the Fall of 2014.  At that

time, Agents of the Federal Bureau of Investigation ("FBI") began investigating

the Playpen website, a global online forum believed to be hosting users for

purposes of distributing and accessing child pornography.[3]  In February 2015,

agents apprehended the administrator of Playpen in Naples, Fla., took control

of the site, and moved it to Virginia.  Rather than shut Playpen down

immediately, agents decided to allow the site to continue operation for 12 days

(February 20, 2015 to March 4, 2015) in the hopes of identifying and

prosecuting Playpen users.  In furtherance of the investigation, the

Government sought to use a Network Investigative Technique that would

covertly transmit computer code to Playpen users.  That code would direct

users' computers to provide investigators with information which could then be

used to locate and identify the users.  In order to employ the NIT, however, the

Government needed to obtain an "NIT search warrant."

In February 2015, a warrant application was prepared and presented to

a magistrate judge in the Eastern District of Virginia.  Absent the use of the

NIT, the Government had no ability to locate and identify users of the Playpen

---

[3]     In affidavits in support for the NIT warrant at issue, as well as various
pleadings, the parties refer to "Website A."  It is now widely known that Website
A refers to the "Playpen," a website offering those who access it the opportunity
to view and download child pornography.  The Court will refer to Playpen, since
the identity of the website has been widely publicized.

website.  Special Agent Douglas Macfarlane, in his Affidavit in Support of

Application for the NIT Search Warrant, stated:

> Due to the unique nature of the Tor network and the method by
> which the network protects the anonymity of its users by routing
> communications through multiple computers or "nodes" . . . other
> investigative procedures that are usually employed in criminal
> investigations of this type have been tried and have failed or reasonably
> appear to be unlikely to succeed if they are tried.

[Dkt. No. 34-1, Affidavit in Support of Application for Search Warrant, at 28-

29, ¶ 31].

On February 20, 2015, U.S. Magistrate Judge Theresa Carroll Buchanan

issued the NIT warrant.  When users accessed Playpen, the NIT caused data

extraction software to be installed on the user's computer – wherever it was

located.  The computer then sent – without Defendant's knowledge or

permission – requested information to a Government-controlled computer.[4]  In

this way, the Government could determine the identity of the person accessing

Playpen – even when that person was using a computer that was located

outside the Eastern District of Virginia.

Using NIT, agents determined that a Playpen registrant with the user

name "johnnyb5" and an IP address of 70.177.122.133 had logged on to the

website from February 20 to March 4, 2015.  Agents were able to determine

that the IP address was operated by Cox Communications, Inc.  Using an

administrative subpoena directed at Cox, they secured the name and address

of the account holder.  This information was included in the affidavit of Special

---

[4]     This information included the IP address of the home computer, its type
of operating system, the computer's "Host Name", its active operating system
username and its media access control ("MAC") address.

6

Agent Joseph Cecchini in support of a search warrant application presented to U.S. Magistrate Judge T. Lane Wilson in the Northern District of Oklahoma (the "Oklahoma warrant") on November 2, 2015.  *See* 15-mj-196-TLW, [Dkt. 1].  The affidavit supporting the Oklahoma warrant is quite similar to the affidavit supporting the NIT warrant application.  However, the Oklahoma warrant details the Defendant's alleged conduct regarding the Playpen website and the information obtained as a result of the NIT.

Judge Wilson issued the search warrant for 1515 S. Nyssa Place, Broken Arrow, Oklahoma.  Agents executed the warrant, and located and seized alleged child pornography.  Judge Wilson then executed a Criminal Complaint and a warrant for the Defendant's arrest.

Defendant appeared before the undersigned on November 16, 2015, at which time, he was released on conditions of supervision.

Defendant's Motion to Suppress seeks to preclude use of any material discovered through the search of his home, arguing, *inter alia*, that the warrant issued by the magistrate judge in Virginia is fatally flawed, and, thus, taints the Oklahoma warrant.

Plaintiff offers three arguments in support of his Motion to Suppress:

- First, that the magistrate judge in Virginia exceeded her authority under Fed. R. Crim. P. 41 by issuing a warrant for property outside her jurisdiction.

- Second, that the affidavit supporting the NIT warrant application falsely represented that the Playpen home page contained a depiction of "prepubescent females, partially clothed with their legs spread."

- Third, the NIT warrant was overbroad because there was not probable cause to justify a search of all "activating computers" on the mere basis of registering with Playpen.

### III.
### APPLICABLE LEGAL PRINCIPLES

Clearly, a search occurs within the meaning of the Fourth Amendment when "the Government obtains information by physically intruding on a constitutionally protected area." *U.S. v. Jones*, -- U.S. --, 132 S.Ct. 945, 950 n.3 (2012). However, the Fourth Amendment is not concerned just with "trespassory intrusions" on property. *Id.*, at 954 (Sotomayor, J. concurring). The reach of the Fourth Amendment does not "turn upon the presence or absence of a physical intrusion." *Id.* (*citing Katz v. U.S.*, 389 U.S. 347, 353 (1967). As Justice Sotomayor pointed out in *Jones*, we now have a variety of forms of electronic and other "novel modes" of surveillance that do not depend upon a physical intrusion of one's property. Such is the case presented here, where it may not be entirely clear what "property" is being searched or seized or even where that search or seizure occurred.

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

describing the place to be searched, and the person or things to be
seized.

U.S. Const. amend. IV.

A search occurs "when the Government acquires information by either
'physically intruding' on persons, houses, papers or effects,' 'or otherwise
invading an area in which the individual has a reasonable expectation of
privacy'." *U.S. v. Scully*, 108 F.Supp.3d 59, 75 (E.D.N.Y. 2015). "A seizure
occurs when the Government interferes in some meaningful way with the
individual's possession of property." *Id.* (*quoting U.S. v. Ganias*, 755 F.3d 125,
133 (2d Cir. 2014). Pursuant to the Federal Rules of Criminal Procedure, the
term "property" includes "documents, books, papers, any other tangible
objects, and *information*." Fed. R. Crim. P. 41(a)(2)(A) (emphasis added). The
Rule permits seizure of electronic and digital data. "Rule 41 is sufficiently
broad to include seizures of intangible items such as dial impulses..." *U.S. v.
New York Tel. Co.*, 434 U.S. 159, 170 (1977).

The legality of a search is predicated upon a finding that the warrant
authorizing the search comports with constitutional requirements and the
provisions of Rule 41 which is "designed to protect the integrity of the federal
courts or to govern the conduct of federal officers." *U.S. v. Pennington*, 635
F.2d 1387, 1389 (10th Cir. 1980) (*quoting U.S. v. Millar*, 543 F.2d 1280, 1284
(10th Cir. 1976) and *U.S. v. Sellers*, 483 F.2d 37, 43 (5th Cir. 1973), *cert.
denied*, 417 U.S. 908 (1974)).

Rule 41 provides in pertinent part:

**Authority to Issue a Warrant.** At the request of a federal law enforcement officer or an attorney for the government:

(1) a magistrate judge with authority in the district … has authority to issue a warrant to search for and seize a person or property located within the district;

(2) a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;

(3) a magistrate judge -- in an investigation of domestic terrorism or international terrorism -- with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district;

(4) a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both; and

(5) a magistrate judge having authority in any district where activities related to the crime may have occurred, or in the District of Columbia, may issue a warrant for property that is located outside the jurisdiction of any state or district, but within any of the following:

(A) a United States territory, possession, or commonwealth;

(B) the premises – o matter who owns them – of a United States diplomatic or consular mission in a foreign state, including any appurtenant building, part of a building, or land used for the mission's purposes; or

(C) a residence and any appurtenant land owned or leased by the United States and used by United States personnel assigned to a United States diplomatic or consular mission in a foreign state.

Fed. R. Crim. P. 41(b)(1)-(5).[5]

If the court finds a violation of Rule 41, this does not automatically mean the evidence seized must be suppressed. "Suppression of evidence … has always been our last resort, not our first impulse." *U.S. v. Leon*, 468 U.S. 897, 907 (1984). The exclusionary rule generates "substantial social costs," which sometimes include setting the guilty free and the dangerous at large. We have therefore been "cautio[us] against expanding" it, and "have repeatedly emphasized that the rule's 'costly toll' upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application," *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 364–365 (1998) (internal citations omitted).

## IV.
## RECENT CASES

Several recent decisions arising from the same facts and circumstances before this Court are instructive. These include: *U.S. v. Michaud*, 2016 WL 337263 (W.D.Wash. Jan. 28, 2016); *U.S. v. Stamper*, Case No. 1:15cr109 (S.D.Ohio Feb. 19, 2016); *U.S. v. Epich*, 2016 WL 953269 (E.D.Wis. March 14, 2016); and, *U.S. v. Levin*, 2016 WL 1589824 (D.Mass. April 20, 106).

All of these cases involve the same "sting" operation that netted Defendant Arterbury. All of the cases involve the NIT warrant that was issued by a magistrate judge in the Eastern District of Virginia. In each case, the NIT warrant sent computer malware to an "activating computer" in a district

---

[5]     Here, the warrant was issued pursuant to Rule 41(b)(1) – requesting a search/seizure of property "located in the Eastern District of Virginia." [Dkt. No. 34-1, at 3].

Case 4:15-cr-00182-JHP Document 56 Filed 12/05/16 Page 23 of 29 Case No. 4:15-cr-00182-JHP Document 56 Filed 12/25/16 Page 23 of 29

Appellate Case: 16-5117     Document: 01019663321     Date Filed: 07/27/2016     Page: 24

outside of Virginia.  That malware seized control of the defendants' computers and caused them to send identifying information to another Government computer in the Eastern District of Virginia.  That identifying information was then used to secure a second warrant from a magistrate judge in the defendant's home district authorizing the search and seizure of the defendant's computer.

All of these four cases found that the NIT warrant violated Fed. R. Crim. P. 41(b).  However, in *Michaud* and *Stamper*, the courts held that the violation of Rule 41 was a mere "technical violation" that did not prejudice the defendant. *Stamper* adopted the reasoning of *Michaud* that one has no reasonable expectation of privacy in one's IP address and such information, even when extraordinary means have been taken to secret that information.  *Michaud* likened the IP address to an unlisted telephone number and opined that the Government would have ultimately been able to get this information without the NIT process.[6]

*Epich* is of little assistance to this Court because it is governed by Seventh Circuit law holding that "violations of federal rules do not justify the exclusion of evidence that has been seized on the basis of probable cause...." *U.S. v. Cazares-Olivas*, 515 F.3d 726, 730 (7th Cir. 2008).  "The remedy of allowing a defendant to go free based on a violation of Rule 41's requirements for obtaining a proper search warrant would be 'wildly out of proportion to the

---

[6]     I find this conclusion wholly at odds with the Affidavit submitted in support of the NIT warrant wherein the Government stated that absent use of the NIT, It would be impossible to secure the IP address.

wrong'." *U.S. v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) (*quoting Cazares-Olivas*, 515 F.3d at 730)).

> In light of *Leon*, it is difficult to anticipate any violation of Rule 41, short of a defect that also offends the Warrant Claus of the Fourth Amendment, that would call for suppression. Many remedies may be appropriate for deliberate violations of the rules, but freedom for the offender is not among them.

*U.S. v. Trost*, 152 F.3d 715, 722 (7th Cir. 1998) (*quoting U.S. v. Hornick*, 815 F.2d 1156, 1158 (7th Cir. 1987)).

The Tenth Circuit does not follow the Seventh Circuit in this regard. In *Krueger*, for example, the Tenth Circuit suppressed evidence on the basis of a Rule 41(b) violation; thus, *Epich* is of little assistance to the Court's analysis.

The remaining case is *Levin*, in which the district court – relying heavily on *Krueger* – found a fundamental jurisdictional defect in issuing the NIT warrant in violation of the provisions of Rule 41(b). Because the NIT warrant was void *ab initio*, the Court held, the good faith exception did not apply and the evidence had to be suppressed.

## V
## DISCUSSION

Because the undersigned believes that the validity of the NIT warrant issued in Virginia is determinative of the Defendant's motion, the Court has focused its attention on that issue and the coincident suppression/good faith issues.

Case 4:15-cr-00182-JHP Document 56 Filed 07/25/16 Page 25 of 58   Case 4:15-cr-00182-JHP Document 56 Filed 07/25/16 Page 25 of 58

Appellate Case: 16-5117    Document: 01019663321    Date Filed: 07/27/2016    Page: 26

The Court begins by addressing two preliminary issues.  First, the warrant under challenge is the NIT warrant issued in the Eastern District of Virginia.  That warrant provided probable cause for the issuance of the second, Oklahoma warrant.  The Government admitted at the April 25 hearing, that if the NIT warrant is fatally flawed, there would not be probable cause to support the Oklahoma warrant.

Second, the Court seeks to clarify what "property" was seized pursuant to the NIT warrant.  The Government contends that in accessing the Playpen website Arterbury sent "packets of data" into the Eastern District of Virginia, and that this digital or electronic data is the property at issue.  The Defendant contends that his home computer was the seized property.  Essentially, he contends that the computer was first seized pursuant to the NIT warrant when the government, through malware, entered his home, took control of his computer and "searched" it for private information he had endeavored to keep confidential.  Subsequently, the computer was physically seized when agents took it pursuant to the Oklahoma warrant.

The Court holds that the property seized was Arterbury's computer.  The Government did not seize the "packets of data" Arterbury sent to the Eastern District of Virginia, because it was unable to do so.  Since there was no way to get this data, the Government employed the NIT to seize Arterbury's computer and direct it to provide the identifying information without his knowledge.  Had the Government seized Arterbury's encrypted information in the Eastern District of Virginia, and, through some sort of forensic tool, un-encrypted it to

learn his identifying information, the Court would be inclined toward the Government's position, but that is not what happened. The Macfarlane affidavit makes it clear that the Government could not obtain Arterbury's IP address until its malware made its way back to his computer in Oklahoma and directed it to provide information to the Government.

### A. The Virginia Judge Lacked Rule 41 Authority to Issue the NIT Warrant.

Defendant contends that the magistrate judge in Virginia lacked authority under Fed. R. Crim. P. 41 to issue a warrant seeking to seize/search property outside her judicial district. Rule 41 provides five grounds authorizing a magistrate judge to issue a warrant. Rule 41(b)(1)-(5). The parties agree that subsections (b)(3) and (b)(5) have no application here. Thus the analysis will be confined to subsections (b)(1), (b)(2) & (b)(4).

Subsection 41(b)(1) does not provide authority for the Virginia warrant because Arterbury's computer was not located in or seized in the Eastern District of Virginia.

The Government argues that subsections (b)(2) & b(4) provide authority for the NIT warrant. The Court disagrees.

Subsection (b)(2) applies where a judge signs a warrant to seize property that is within his/her jurisdiction at the time the warrant is signed, but has been re-located outside that jurisdiction at the time the warrant is actually executed. The Government contends that by electronically reaching into the Eastern District of Virginia, Arterbury brought "property" into that district that was subject to the NIT warrant. The Government argues that the property was

then removed from Virginia to Oklahoma, thus, the NIT warrant comports with subsection (b)(2).

The Court is not persuaded by this argument. The property seized in this instance was Arterbury's computer, which at all relevant times remained in Oklahoma. The NIT warrant allowed the Government to send computer code or data extraction instructions to Arterbury's computer, wherever it was located. The Government "seized" that computer and directed it to send certain information to the Government – all without Arterbury's knowledge or permission. Arterbury's computer was never in the Eastern District of Virginia and subsection (b)(2), therefore, does not apply. Furthermore, even if the property seized was electronic information, that property was not located in the Eastern District of Virginia at the time the warrant was signed. This information only appeared in Virginia *after* the Warrant was signed and executed and the Government seized control of Defendant's computer in Oklahoma.

The Court is also unpersuaded by the Government's argument that the NIT warrant is valid under Rule 41(b)(4) as a "tracking warrant." The NIT did not track Defendant's computer as it moved. In *Michaud*, the district court rejected the Government's argument as applied to the same NIT operation, stating, "If the 'installation' occurred on the government-controlled computer, located in the Eastern District of Virginia, applying the tracking device exception breaks down, because Mr. Michaud never controlled the government-controlled computer, unlike a car with a tracking device leaving a particular

16

district," and "[i]f the installation occurred on Mr. Michaud's computer, applying the tracking device exception again fails, because Mr. Michaud's computer was never physically located within the Eastern District of Virginia." This Court agrees with *Michaud* in this regard and concludes Subsection 41(b)(4) is not applicable. The NIT warrant was not for the purpose of installing a device that would permit authorities to track the movements of Defendant or his property.

Furthermore, the drafters of Rule 41 knew how to avoid the territorial limit on issuance of warrants when they wished to do so. Rule 41(b)((3) removes the territorial limitation in cases involving domestic or international terrorism. In such cases, a magistrate judge "with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district." Rule 41(b)(3). The drafters of Rule 41 could easily have included child pornography in Rule 41(b)(3) and, thereby, avoided the territorial limitation of Rule 41(b)(1) & (2). They did not do so. The Court can only conclude that they did not intend to remove the territorial limit in cases such as the one before the Court.

Authority to issue warrants exists only insofar as granted by the rules, and no further. Accordingly, just as the court concluded in *Michaud*, this Court finds that the NIT warrant was not authorized by any of the applicable provisions of Rule 41.[7] Thus, the court concludes that the issuance of the

---

[7] Apparently, the Government is aware of the problem of authorizing NIT warrants under the current Rules of Criminal Procedure. The Department of Justice has proposed amendments to Rule 41 that would resolve this issue.

warrant violated Rule 41(b).[8]

### B. The Virginia Judge Lacked Authority Under the Federal Magistrate Judges Act.

There is another fundamental problem with the Virginia magistrate judge's authority to issue the NIT warrant. As Judge Gorsuch noted in his concurring opinion in *Krueger*, the Government's problem goes to the heart of the magistrate judge's statutory source of power. The Federal Magistrate Judges Act provides three territorial limits on a magistrate judge's power:

> Each United States magistrate judge serving under this chapter shall have [1] within the district in which sessions are held by the court that appointed the magistrate judge, [2] at other places where that court may function, and [3] elsewhere as authorized by law … all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts….

*Id.* at 1118 (*citing* 28 U.S.C. § 636(a)).[9]

As in *Krueger*, the magistrate judge "purported to exercise power in none of these places." 809 F.3d at 1118. Thus, Judge Gorsuch notes, "The warrant on which the government seeks to justify its search in this case <u>was no warrant at all</u> when looking to the statutes of the United States." *Id.* (emphasis added).

---

[8]    Defendant also asserts the NIT Warrant lacked statutory jurisdiction and therefore violated the Fourth Amendment. [Dkt. No. 33 at pp. 10-11 (*citing* Judge Gorsuch's concurring opinion in *Krueger*, 809 F.3d at 1117-26)]. However, consistent with the majority opinion in *Krueger*, since the court has determined that there was a clear Rule 41(b) violation, it declines to reach this issue. *Id.* at 1104-05 ("[C]onsistent with the fundamental rule of judicial restraint, we decline to reach a constitutional question that is not necessary for our resolution of this appeal (citation omitted)).

[9]    In *Krueger*, the government secured a warrant from a magistrate judge in Kansas permitting the seizure and search of property located in Oklahoma. The Tenth Circuit affirmed the lower court's finding that the warrant violated Rule 41 and the court's suppression of the evidence seized pursuant to the invalid warrant. *See*, discussion at p. 19-21, *infra*.

## C. Under *Krueger*, Suppression is Warranted Because the Search Would Not Have Occurred But For the Breach of Rule 41(b).

The court must next consider whether suppression is justified.  To establish the case for suppression, Defendant must show that he was prejudiced by the violation of Rule 41.  The prejudice standard adopted in *Krueger* allows defendant to show either "(1) prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) intentional disregard for a provision of the Rule." *Krueger*, 809 F.3d at 1115 (citing *United States v. Pennington*, 635 F.2d 1387, 1390 (10th Cir. 1980)).   As set forth above, the court does not address whether the warrant fails for constitutional reasons, but limits its analysis to the violation of Rule 41(b).  Specifically, does a violation of Rule 41(b) justify suppression of evidence?

In *Krueger*, the Tenth Circuit addressed this question for the first time. ("The Court has not yet had occasion to consider whether suppression is justified when a warrant is issued by a federal magistrate judge who clearly lacks authority to do so under Rule 41(b)(1)." *Krueger*, 809 F.3d at 1115).  The court answered that question affirmatively.

In *Krueger*, a Homeland Security Investigations ("HSI") agent learned that child pornography was being distributed over the internet from an IP address registered to Krueger, a Kansas resident.  *Id.* at 1111.  The agent obtained a warrant ("Warrant 1") from a United States magistrate judge in the District of Kansas to search defendant Krueger's Kansas residence for items such as

computers and cell phones that might be used to depict child pornography.  *Id.*
Upon executing the warrant, the agent was told by Krueger's roommate that
Krueger was in Oklahoma City and may have taken his computer and cell
phone with him.  *Id.*  After an HSI agent in Oklahoma verified Krueger's
whereabouts, the agent in Kansas sought and obtained a second warrant
("Warrant 2") from a different magistrate judge in the District of Kansas.  *Id.*
The second warrant authorized law enforcement to search the Oklahoma
residence where Krueger was staying and Krueger's automobile.  The warrant
was immediately transmitted to an HSI agent in Oklahoma, who executed the
warrant and seized Krueger's computer and external hard drive.  *Id.*  A
subsequent search of the devices revealed evidence that Krueger had
downloaded and traded child pornography using his peer-to-peer networking
account and, as a result, Krueger was charged with distribution of child
pornography in violation of 18 U.S.C. § 2252(a)(2).  *Id.* at 1112.  Krueger filed a
motion to suppress, asserting Warrant 2 violated Rule 41(b)(1) because the
magistrate judge in the District of Kansas did not have authority to issue a
warrant for property already located in Oklahoma.  *Id.*  After a suppression
hearing, the district court granted the motion, concluding that the warrant
violated Rule 41(b)(1) and Krueger had demonstrated prejudice in the sense
that the Kansas magistrate judge would not have issued Warrant 2 had Rule
41 "been followed to the letter."  *Id.* at 1112-13.

On appeal, the Government conceded that Warrant 2 violated Rule
41(b)(1) because the magistrate judge in Kansas had no authority to issue a

warrant for property already located in Oklahoma but argued the district court

applied the wrong legal standard in determining that Krueger demonstrated

prejudice as a result of the violation.  *Id.* at 1113.  The Government asserted

the appropriate question was not whether any judge in the District of *Kansas*

could have issued Warrant 2, but instead was whether any judge in the

Western District of *Oklahoma* could had issued the warrant.  *Id.* at 1116.  The

Tenth Circuit disagreed, concluding the Government's proposed approach was

too speculative.  *Id.*  It stated, "[I]nstead of focusing on what the Government

*could have* done to comply with Rule 41(b)(1), we conclude that prejudice in

this context should be anchored to the facts as they actually occurred." *Id.*

Accordingly, it adopted the district court's standard for determining whether

defendant had established prejudice and asked "whether the issuing federal

magistrate judge could have complied with the Rule." *Id.*

The Government argues *Krueger* is inapposite because there, the agent

knew the exact location of the evidence being sought, and was aware the

location was in Oklahoma, when he obtained Warrant 2 from a Kansas

magistrate judge.   Here, in contrast, the agent did not know and could not

have known the physical location of Playpen registrants due to the affirmative

steps taken by Playpen administrators and users to conceal their illegal

activity.

The Government's position finds some support in *Michaud, supra.*  In

*Michaud*, the district court concluded that although a technical violation of

Rule 41 had occurred, suppression was not warranted because the record did

not show that defendant was prejudiced or that the FBI acted intentionally and with deliberate disregard of Rule 41(b). Applying the Ninth Circuit's definition of prejudice, i.e., "prejudice 'in the sense that the **search** would not have occurred . . . if the rule had been followed,'" the district court found that the defendant had "no reasonable expectation of privacy of the most significant information gathered by deployment of the **NIT**, Mr. Michaud's assigned IP address, which ultimately led to Mr. Michaud's geographic location." *Id.* at **6-7. Furthermore, the court concluded that "[t]he IP address was public information, like an unlisted telephone number, and eventually could have been discovered." *Id.* at *7.[10]

The Tenth Circuit's definition of "prejudice" – *i.e.*, "prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed" – is similar to the Ninth Circuit definition. *See Krueger*, 809 F.3d at 1115. Here, the searches of Arterbury's computer would not have occurred had Rule 41(b) been followed. Absent deployment of the NIT, the physical location of Playpen registrants was not discoverable. *See Macfarlane Affidavit*, Dkt. No. 34-1]. Under the *Krueger/Pennington* framework, the evidence must be suppressed. Rule 41 was clearly violated, and the Oklahoma search would not have occurred had Rule 41(b) been

---

[10]     The court in *Michaud* offered no citation or support for these conclusions. The court indicated that the Government would have no difficulty discovering the IP address for an individual using the Tor network. This is contrary to the undersigned's understanding of how the Tor network works and is specifically contradicted by the statements set forth in Special Agent Macfarlane's Affidavit seeking the NIT Warrant in the Eastern District of Virginia. [Dkt. No. 34-1, ¶¶ 8, 9, & 31].

followed.   Furthermore, *Krueger* articulates the appropriate inquiry as whether any magistrate judge in the Eastern District of Virginia could have complied with Rule 41 given the facts of this case.  The answer to that question is "no."

The Government also argues that there was no prejudice to Arterbury because he had no reasonable expectation of privacy in his IP address.  The Government asserts that the IP address is actually the property of the Internet Service Provider, and that one must disclose this IP address to a third-party in order to access the Internet.  Were the IP address obtained from a third-party, the Court might have sympathy for this position.  However, here the IP address was obtained through use of computer malware that entered Defendant's home, seized his computer and directed it to provide information that the Macfarlane affidavit states was unobtainable in any other way.  Defendant endeavored to maintain the confidentiality of his IP address, and had an expectation that the Government would not surreptitiously enter his home and secure the information from his computer.

### D. The "Good Faith Exception Does Not Apply.

The most troubling aspect of this case is whether suppression of evidence can be avoided through application of the "good-faith" exception to the exclusionary rule.  Having determined that the NIT warrant was void as against Aterbury, the Court must determine whether suppression of the evidence found during the search of his home is warranted.   In *U.S. v. Leon*, 468 U.S. 897 (1984), and its companion case, *Mass. v. Sheppard*, 468 U.S. 981 (1984), the Supreme Court recognized a "good faith" or *Leon* exception to the Fourth

Amendment exclusionary rule.[11]  Under the *Leon* exception, evidence obtained
pursuant to a warrant later found to be invalid may be introduced in the
government's case-in-chief at the defendant's trial, if a reasonably well-trained
officer would have believed that the warrant was valid.  The premise for the
exception is that there is inadequate justification to apply the exclusionary rule
when police obtain a warrant, reasonably relying on its validity, only to later
learn that the judge erred in authorizing the search.  The court noted in *Leon*,
"Penalizing the officer for the magistrate's error, rather than his own, cannot
logically contribute to the deterrence of Fourth Amendment violations."  *Leon*,
468 U.S. at 921.

In *Krueger*, the Tenth Circuit held that violation of Rule 41(b) justified
suppression of evidence; however, *Krueger* dealt with a single warrant – a
warrant issued by a Kansas magistrate judge authorizing search and seizure of
property in Oklahoma.  This case – and those cited above in ¶IV – presents a
different scenario:  a second warrant is secured in the appropriate jurisdiction,
but probable cause for the second warrant was secured by means of an earlier,
invalid warrant.  Should the good-faith exception permit officers to rely on the
second, valid warrant?  Or is the second warrant fatally flawed because of the
invalidity of the first warrant?

---

[11]     *Leon* "contemplated two circumstances:  one in which a warrant is issued
and is subsequently found to be unsupported by probably cause and the other
in which a warrant is supported by probable cause, but is technically
deficient."  *U.S. v. Levin*, 2016 WL 1589824 (D.Mass. April 20, 2016) (*quoting
U.S. v. Vinnie*, 683 F.Supp. 285, 288 (D. Mass. 1988)).

The Government first contends that the *Leon* exception should apply here because the NIT warrant is a "technical violation" of Rule 41(b). The Court rejects the notion that this case presents nothing more than a "technical violation" of Rule 41. It is true that courts have found that suppression is not warranted in some cases of a Rule 41 violation; however, these have generally involved violations of procedural requirements under Rule 41(a), (c), (d), or (e). *E.g.*, *U.S. v. Rome*, 809 F.2d 665 (10th Cir. 1987) (violation of Rule 41(c)). *See Krueger*, 809 F.3d at 1115, n.7 (collecting cases). However, in this case the violation of Rule 41 goes to the fundamental jurisdiction and "substantive judicial authority" of the magistrate judge to issue the NIT warrant. *Krueger*, 809 F.3d at 1115, n.7 (*citing Berkos*, 543 F.3d at 397).

In *Levin*, the Court relied on *Krueger* and *Berkos* to distinguish technical violations of Rule 41 from the type of violation presented here:

> Rule 41, however, has both procedural and substantive provisions — and the difference matters. Courts faced with violations of Rule 41's procedural requirements have generally found such violations to be merely ministerial or technical, and as a result have determined suppression to be unwarranted. By contrast, this case involves a violation of Rule 41(b), which is "a substantive provision[.]" *United States v. Berkos*, 543 F.3d 392, 398 (7th Cir. 2008); *see also United States v. Krueger*, 809 F.3d 1109, 1115 n.7 (10th Cir. 2015) (noting that Rule 41(b)(1) "is unique from other provisions of Rule 41 because it implicates substantive judicial authority," and accordingly concluding that past cases involving violations of other subsections of Rule 41 "offer limited guidance") (internal quotation marks and citation omitted). Thus, it does not follow from cases involving violations of Rule 41's procedural provisions that the Rule 41(b) violation at issue here — which involves the authority of the magistrate judge to issue the warrant, and consequently, the underlying validity of the warrant — was simply ministerial. *See United States v. Glover*, 736 F.3d 509, 515 (D.C. Cir. 2013) (concluding that a Rule 41(b) violation constitutes

a "jurisdictional flaw" that cannot "be excused as a 'technical defect'").

*Levin*, 2016 WL 1589824, at *7

In *Krueger*, the trial Court noted, "[I]t is quite a stretch to label the government's actions in seeking a warrant so clearly in violation of Rule 41 as motivated by 'good faith.' " *U.S. v. Krueger*, 998 F.Supp.2d 1032, 1036 (D.Kan. 2014) (*quoting U.S. v. Glover*, 736 F.3d 509, 516 (D.C.Cir. 2013)).

*Levin* concluded that the good-faith exception was inapplicable to a warrant held to be void *ab initio* under Rule 41(b). *Id.* Other courts have indicated, in dicta, that where evidence is obtained pursuant to a warrant that is void *ab initio*, the good-faith exception does not apply. *See, Levin*, at *10 & n.17 (collecting cases). *See also, State v. Wilson*, 618 N.W.2d 513, 520 (S.D. 2000) (good-faith exception inapplicable to warrant by state judge acting outside territorial jurisdiction); *State v. Nunez*, 634 A.2d 1167, 1171 (D.R.I. 1993) (good faith exception would not apply to a warrant that is void *ab initio*).

Based on the holdings of *Krueger* and *Levin*, I conclude that where the Rule 41 violation goes directly to the magistrate judge's fundamental authority to issue the warrant, as in the violation presented here, it is not a "technical violation" of the Rule. The warrant is void *ab initio*, suppression is warranted and the good-faith exception is inapplicable.

The Government also argues that because of exigent circumstances the NIT search would have been justified, even had the magistrate judge in Virginia refused to sign it. The Court is not persuaded by this argument either. The

exigent circumstances were the on-going downloading and distribution of child pornography.  In this instance, the specific activity at issue was on-going only because the Government opted to keep the Playpen site operating while it employed the NIT.  The Government cannot assert exigent circumstances when it had a hand in creating the emergency.

Exclusion of the evidence in this case will serve the remedial and prophylactic purposes of the exclusionary rule, by serving notice to the Government that use of an NIT warrant under the circumstances presented here exceeds a magistrate judge's authority under the Federal Magistrate Judges Act and Rule 41(b) of the Rules of Criminal Procedure.

The NIT Warrant clearly did not comport with Fed. R. Crim. P. 41(b), and, therefore, was invalid *ab initio*.  Arterbury was prejudiced by issuance of the NIT Warrant and the Court finds no basis for application of the good faith exception to the exclusionary rule.  Accordingly, Defendant's motion to suppress [Dkt. No. 33] must be granted.[12]

## V.
## CONCLUSION

The purpose of Rule 41 is to carry out the mandate of the Fourth Amendment.  It binds federal courts and federal law enforcement officers.  *Navarro v. U.S.*, 400 F.2d 315, 318-19 (5th Cir 1968), *overruled on other grounds*, *U.S. v. McKeever*, 905 F.2d 829, 833 (5th Cir. 1990)):

---

[12] Having determined the United States magistrate judge in Virginia exceeded her authority under Fed. R. Crim. P. 41, the court declines to address defendant's remaining arguments in support of suppression.

> The obligation of the federal agent is to obey the Rules. They are drawn for the innocent and guilty alike. They prescribe standards for law enforcement. They are designed to protect the privacy of the citizen, unless the strict standards set for searches and seizures are satisfied. That policy is defeated if the federal agent can flout them and use the fruits of his unlawful act either in federal or state proceedings.

*Rea v. United States*, 350 U.S. 214, 217-18 (1956).

- o The NIT warrant was issued in violation of Rule 41(b).

- o The violation was not a "technical violation" because it implicates "substantive judicial authority." *Krueger*, 809 F.3d at 1115, n.7.

- o The NIT warrant was, therefore, void *ab initio*. *Levin*, at *8.

- o The *Leon* exception does not apply when an underlying warrant is void *ab initio*. *Levin*, at *11-*12.

Accordingly, for the reasons set forth above, I recommend the Defendant's Motion to Suppress [Dkt. No. 33] be **GRANTED**.

## OBJECTIONS

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. In order to expedite this matter for consideration by the District Judge, the period for objections must be shortened. *See* Fed. R. Crim P. 59(b). Therefore, a party wishing to file objections to this Report and Recommendation must do so **by May 2, 2016**. *See* 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b). The failure to file timely

written objections to this Report and Recommendation waives a party's right to review.  Fed. R. Crim P. 59(b).

**DATED** this 25th day of April 2016.

Paul J. Cleary
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|    ) | |
|       Plaintiff,    ) | |
|    ) | |
| v.    ) | **Case No. 15-CR-000182-JHP** |
|    ) | |
| SCOTT FREDRICK ARTERBURY,    ) | |
|    ) | |
|       Defendant.    ) | |

## UNITED STATES' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER SUPPRESSING EVIDENCE

The United States of America, by and through counsel, Danny C. Williams, Sr., United States Attorney for the Northern District of Oklahoma, and Andrew J. Hofland, Assistant United States Attorney, respectfully moves this Court to reconsider its May 12, 2016 Order (Doc. 47) that adopted the Magistrate Judge's Report and Recommendation (Doc. 42) and granted Defendant Scott Fredrick Arterbury's Motion to Suppress Evidence (Doc. 25). *United States v. Hardy*, No. 07-MJ-108-FHM, 2008 WL 5070945, at \*1 (N.D. Okla. Nov. 21, 2008) ("A district court has inherent authority to reconsider its rulings as long as it retains jurisdiction over a matter." (internal quotation omitted)). The Order granting suppression merits reconsideration for the following reasons:

ARGUMENT AND AUTHORITY

## 1.   The NIT warrant was not void *ab initio.*

The court's threshold determination that the NIT Warrant was void from the outset because the magistrate judge was without authority to issue it is incorrect. First, even assuming, without conceding, that Rule 41 did not permit the magistrate judge to issue a warrant for the search of activating computers located in other federal districts, the warrant was not wholly void because Rule 41 plainly authorized

the magistrate judge to issue the NIT Warrant for the search of activating computers located within the Eastern District of Virginia and within a territory, possession, or commonwealth of the United States and diplomatic or consular premises and residences of the United States located in foreign states. *See* Fed. R. Crim. P. 41(b)(1) and (5). Second, the Rule 41 violation that the Court found to have occurred in this case—essentially, that the government obtained authorization for the NIT Warrant from the wrong judge in the right district—does not implicate the Fourth Amendment and therefore does not render the warrant utterly void without regard to whether the defendant suffered prejudice. For both of these reasons, the Court's finding that the NIT Warrant was void *ab initio* must be reconsidered.

As argued in its opposition to the defendant's motion to suppress, the United States maintains that the magistrate judge was authorized pursuant to Rule 41(b) (and ultimately, 28 U.S.C. § 636(a)) to issue the NIT warrant to search for activating computers, wherever located, that accessed Playpen to view, download, and distribute child pornography. However, even accepting for the purposes of this motion the court's finding that § 636(a) and Rule 41(b) did not permit the magistrate judge to issue a warrant for the search of activating computers that were located in other districts, the court's finding that the magistrate judge was wholly without authority to approve the NIT warrant is erroneous. In fact, Rule 41(b) permitted the magistrate judge, at a minimum, to issue the NIT warrant for the search of activating computers located within the Eastern District of Virginia and within the territorial and diplomatic areas listed in subsection (5). Since the magistrate judge acted well within her authority to approve the search warrant for these locations, it cannot be said that "there simply was no judicial approval" for the warrant. *See* Doc. 42 at 18.

As a threshold matter, the NIT warrant satisfied the Fourth Amendment's warrant requirements in all respects. As laid out in the United States' Response (Doc. 34), the NIT warrant application established probable cause to search the activating computers of users who intentionally logged on to the Target Website to view, download, and disseminate child pornography. Further, the warrant application particularly described the things to be seized. And the defendant does not claim that the magistrate judge to whom the warrant was presented was not "neutral and detached," as required to ensure the protections afforded by the Fourth Amendment, *Johnson v. United States*, 333 U.S. 10, 14 (1948), or was not duly appointed and authorized to perform all of the functions of a United States magistrate judge in the Eastern District of Virginia. *See* 28 U.S.C. § 636.

Under these circumstances, the magistrate judge was clearly authorized, at a minimum, pursuant to § 636(a)(1) and Rule 41(b)(1) and (5) to issue the NIT warrant, which satisfied the Fourth Amendment's probable cause and particularity requirements, for the search of activating computers in the Eastern District of Virginia and United States' territories and diplomatic locations. Since the magistrate judge was permitted by statute and rule to issue the constitutional NIT warrant for searches within her jurisdiction, the court's finding that she had no authority to issue the warrant is unsound. That the NIT warrant could have been—and in fact was, *see*, *e.g.*, *United States v. Darby*, No. 16-CR-36-RGD-DEM (E.D. Va. Jun. 3, 2016) (defendant charged with possession of child pornography after deployment of NIT to computer located in the Eastern District of Virginia identified him as a user of Website A)—validly executed in the Eastern District of Virginia distinguishes this case from *United States v. Krueger*, 809 F.3d 1109 (10th Cir. 2015), and *United States*

*v. Glover*, 736 F.3d 509 (D.C. Cir. 2013), which the Court relied upon to find the NIT warrant void *ab initio*.

In both *Krueger* and *Glover*, the warrant applications presented to the judge for approval made clear that the place to be searched was not within the authorizing judge's district. *Krueger*, 809 F.3d at 1111 (warrant presented to magistrate judge in the District of Kansas asked for permission to search home and vehicle located in Oklahoma); *Glover*, 736 F.3d at 510 (warrant presented to district court judge in the District of Columbia asked for permission to install tracking device on vehicle located in Maryland). As a consequence, the courts concluded that the warrants were invalid at the time they were issued because the territorial limitations of Rule 41 (and in *Glover*, of Title III) did not authorize the judges to issue warrants for searches in other districts. *Krueger*, 809 F.3d at 1116-17, 1118 (Gorsuch, J., concurring); *Glover*, 736 F.3d at 515. Here, in contrast, the NIT warrant application presented to the magistrate judge asked for permission to search the activating computers—"wherever located"—that accessed the Playpen server located in the Eastern District of Virginia. Unlike the warrants in *Krueger* and *Glover*, the NIT warrant did not specify that the search would occur only outside of the Eastern District of Virginia, and since the warrant also contemplated a search within the authorizing judge's district, it was presumptively valid at the time it was issued. *Cf. United States v. Moreno-Magana*, No. 15-CR-40058-DDC, 2016 WL 409227, at *14-15 (D. Kan. Feb. 3, 2016) (distinguishing *Krueger* and rejecting claim that warrant issued by Kansas state court judge to search phone was void *ab initio* because, at time warrant was issued, precise location of phone was unknown; thus, unlike in Krueger, where both law enforcement and issuing magistrate knew that the property to be searched was not within the magistrate's district at time warrant was issued, "[t]he

4

warrants here did not authorize pinging of phones that the issuing judge knew to be outside Kansas"). The court should therefore reconsider its finding that the magistrate judge was without any legal authority to issue the NIT warrant.

## 2. The defendant was not prejudiced by any Rule 41 violation and therefore is not entitled to suppression.

Despite finding, on one hand, that the warrant was void *ab initio*, the court completes the Rule 41 suppression analysis in accordance with *United States v. Pennington*, 635 F.2d 1387, 1390 (10th Cir. 1980). The United States agrees that the proper factors to be first considered in determining whether suppression might be warranted for a Rule 41 violation are listed in *Pennington*. In that vein, and without proof of intentional or deliberate disregard for a provision of the Rule, the defendant must demonstrate that he suffered prejudice to merit suppression. *See*, *e.g.*, *United States v. Michaud*, No. 15-CR-05351-RJB, 2016 WL 337263, at *5-7 (W.D. Wash. Jan. 28, 2016) (rejecting claim that very same NIT warrant issued in this case required suppression due to Rule 41 violation and finding that violation was merely technical and defendant could not establish prejudice); *United States v. Stamper*, No. 15-CR-109-MRB, Doc. 48 at 21-23 (S.D. Ohio Feb. 19, 2016) (same); *United States v. Epich*, No. 15-CR-163-PP, 2016 WL 953269, at *2 (E.D. Wis. Mar. 14, 2016) (discussing same NIT warrant issued in this case and noting that, even if violation of Rule 41 occurred, it did not require suppression); *United States v. Werdene*, No. 15-CR-434-GJP, Doc. 33 at 21 (E.D. Pa. May 19, 2016) (denying motion to suppress the same NIT warrant issued in this case because, in part, the defendant did not prove prejudice, defined in the Third Circuit as "offend[ing] concepts of fundamental fairness or due process"); *Darby*, 16-CR-36-RGD-DEM, Doc. 31 at 25 (E.D. Va. Jun. 3, 2016) (no prejudice when executed within the Eastern District of Virginia insofar as Rule 41(b)(1) would have authorized a search of the magistrate's own district);

*United States v. Hernandez*, No. 08-198(1) (JRT/RLE), 2008 WL 4748576, at *15-16 (D. Minn. Oct. 28, 2008) (finding issuance of constitutionally valid warrant by Minnesota state court judge for search of bank located in South Dakota to be technical violation that did not require suppression because defendant was not prejudiced); *United States v. Vann*, No. 07-CR-247 (JMR/RLE), 2007 WL 4321969, at *22-23 (D. Minn. Dec. 6, 2007) (similar, where warrant issued by federal magistrate judge in the District of Minnesota for search of property in the Western District of Wisconsin); *United States v. LaFountain*, 252 F. Supp. 2d 883, 891 (D.N.D. 2003) (similar, where warrants issued by tribal court judge). As these cases make clear, violations of Rule 41(b), just like violations of Rule 41's other prerequisites, do not automatically require suppression without a showing of prejudice to the defendant. *See United States v. Burgos-Montes*, 786 F.3d 92, 108-09 (1st Cir. 2015), *cert. denied*, 136 S. Ct. 599 (2015) (finding that Rule 41(f)(1)(C) violation does not require suppression absent a showing of prejudice and noting that "[o]ther circuits have held the same applies to all the prerequisites of Rule 41") (citing *United States v. Schoenheit*, 856 F.2d 74, 76-77 (8th Cir. 1988), and *United States v. Burke*, 517 F.2d 377, 386-87 (2d Cir. 1975)).

This Court interprets the *Krueger* definition of prejudice to say that the operative question is not what was possible but what factually happened in this instance. But this formulation of prejudice, however, "makes no sense, because under that interpretation, all searches executed on the basis of warrants in violation of Rule 41(b) would result in prejudice, no matter how small or technical the error might be. Such an interpretation would defeat the need to analyze prejudice separately from the Rule 41(b) violation." *Michaud*, 2016 WL 337263, at *6. As discussed above, there is no basis to treat Rule 41(b) violations differently from other Rule 41 violations and

6

the thus the Court's prejudice formulation, which effectively eliminates the prejudice inquiry altogether by creating a per se rule of suppression for all Rule 41(b) violations, cannot stand.

Here, the defendant's prejudice argument boils down to an assertion that, because he intentionally employed anonymizing technology to perpetrate his crimes against children in the shadows of the dark web, Rule 41(b) prohibits law enforcement from obtaining a warrant authorizing its use of the NIT to identify and locate him. That is not the sort of claimed "prejudice" that should result in suppression. The NIT warrant satisfied the Fourth Amendment's probable cause and particularity requirements, and thus, had it been presented to a judge with authority to issue the warrant—such as a magistrate within the Northern District of Oklahoma—Rule 41 clearly would have authorized the very same search of the defendant's computer that occurred. *See, e.g.*, *Vann*, 2007 WL 4321969, at *23 ("[T]he presence of probable cause for the issuance of the Warrant adequately demonstrates that the same Warrant would have been issued by a Magistrate Judge in the Western District of Wisconsin, if it had been presented for that Judge's review."); *Hernandez*, 2008 WL 4748576, at *16 (same, involving issuance of warrant by state court judge without jurisdiction); *LaFountain*, 252 F. Supp. 2d at 891 (same, involving issuance of warrant by tribal court judge without jurisdiction).

Moreover, although it would have been difficult for the United States to identify the defendant's IP address—the most significant information gathered by deployment of the NIT—without the NIT warrant, the IP address was public information in which the defendant had no reasonable expectation of privacy and thus it was obtainable by other lawful means. *Michaud*, 2016 WL 337263, at *7. *Cf. United States v. Welch*, 811 F.3d 275, 281 (8th Cir. 2016) (finding no prejudice to defendant

from violation of Rule 41's notice provision because, had Rule 41 been followed, same search would have occurred and same evidence recovered). In short, had the court applied the proper standard for evaluating prejudice resulting from the Rule 41(b) violation, the record makes manifest that the defendant did not suffer prejudice and that suppression was not an appropriate remedy.

## 3.    The good-faith exception precludes suppression of evidence in this case.

Even assuming, without conceding, that the warrant was void at the outset, suppression is not warranted. The court committed two errors in analyzing whether the evidence obtained pursuant to the NIT warrant should be suppressed, notwithstanding the United States' apparent good-faith reliance on the now-invalidated warrant. First, the Court erroneously concluded that the good-faith exception was inapplicable here because the deployment of the NIT was effectively a warrantless search. Second, the Court erroneously concluded that it was not objectively reasonable for law enforcement to have relied on the NIT warrant in executing the search. The record and relevant case law do not support either of those conclusions, and since suppression will serve only to punish law enforcement for a reasonable, if now deemed mistaken, interpretation of Rule 41(b) and will not serve to deter any future violation, the Court should reconsider its conclusion that suppression—a remedy of last resort—is required in this case.

First, as noted above, the warrant was not void *ab initio* because the magistrate judge had authority under both the Federal Magistrates Act and Rule 41(b) to issue the challenged warrant deploying the NIT, at a minimum, within the territorial limits of the Eastern District of Virginia and any possession, territory, or commonwealth of the United States and diplomatic or consular premises and residences of the United States located in foreign states. *See* Fed. R. Crim. P. 41(b)(1) and (5). Even

8

accepting the Court's finding that the NIT warrant violated Rule 41(b) by permitting a search beyond those geographic boundaries, the error was not one of constitutional magnitude, as it did not vitiate probable cause for the search or render the warrant insufficiently particular. Thus, although the warrant may be "voidable" due to the Rule 41 violation, it does not follow that it is wholly "void" and therefore suppression is automatic. Indeed, other courts have refused to suppress evidence obtained from the same NIT warrant issued in this case, finding that suppression was an inappropriate remedy where the Rule 41(b) violation did not undermine the constitutionality of the warrant and the government's reliance on the warrant was objectively reasonable. *See Michaud*, 2016 WL 337263, at *7; *Stamper*, D.48 at 19-23; *Epich*, 2016 WL 953269, at *2. Other courts have likewise refused to suppress evidence obtained from warrants that were later found invalid due to the issuing judge's lack of authority. *See, e.g., United States v. Master*, 614 F.3d 236, 242-43 (6th Cir. 2010); *Hernandez*, 2008 WL 4748576, at *16-17; *Vann*, 2007 WL 4321969, at *23; *LaFountain*, 252 F. Supp. 2d at 891-92. The analysis in those cases, although not binding on this Court, provides compelling reasons for this Court to reconsider its conclusion that the good-faith exception is inapplicable to this case.

Second, the Court's suppression order is inconsistent with the Supreme Court's recent exclusionary rule jurisprudence. The Supreme Court has made clear that "suppression is not an automatic consequence of a Fourth Amendment violation," but instead "turns on the culpability of the police and the potential of exclusion to deter wrongful police misconduct." *Herring v. United States*, 555 U.S. 135, 137 (2009); *Illinois v. Gates*, 462 U.S. 213, 223 (1983) ("The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies."). In *Herring*, the Supreme

Court refused to suppress evidence obtained from the warrantless search of the de-
fendant's person and vehicle incident to his arrest pursuant to a non-existent arrest
warrant. *Id.* at 147. The Court explained that, "[t]o trigger the exclusionary rule,
police conduct must be sufficiently deliberate that exclusion can meaningfully deter
it, and sufficiently culpable that such deterrence is worth the price paid by the justice
system." *Id.* at 144. The Court's emphasis on balancing deterrence and culpability in
*Herring* did not mark a drastic departure from *United States v. Leon*, 468 U.S. 897,
922 (1984), where the Court stated that "the marginal or nonexistent benefits pro-
duced by suppressing evidence obtained in objectively reasonable reliance on a sub-
sequently invalidated search warrant cannot justify the substantial costs of exclu-
sion," but it did signal the Court's shift "toward preserving evidence for use in ob-
taining convictions, even if illegally seized, than toward excluding evidence in order
to deter police misconduct unless the officers engage in 'deliberate, reckless, or
grossly negligent conduct.'" *Master*, 614 F.3d at 243 (quoting *Herring*, 555 U.S. at
144). "Indeed, exclusion 'has always been our last resort, not the first impulse,' and
our precedents establish important principles that constrain application of the ex-
clusionary rule." *Herring*, 555 U.S. at 140 (quoting *Hudson v. Michigan*, 547 U.S.
586, 591 (2006)).

*Herring* makes clear that this Court erred in holding that the good-faith ex-
ception does not apply to a search conducted pursuant to a warrant that is void at the
outset. *Herring* involved the unlawful arrest of an individual pursuant to a warrant
that had been rescinded five months earlier. 555 U.S. at 137-38. Although the arrest
warrant had no legal force—essentially, it no longer existed—and thus did not au-
thorize the defendant's arrest, the Supreme Court proceeded to consider whether the
officers' reliance on the non-existent warrant was objectively reasonable in deter-

mining whether evidence obtained from the warrantless search incident to the un-
lawful arrest should be suppressed. Id. at 141-44. Thus, even if this Court adheres to
its ruling that the NIT warrant, like the arrest warrant in *Herring*, was no warrant
at all, *Herring* dictates that the suppression is not automatic, and that the officers'
good faith—as well as the deterrent benefits of suppression—must be considered in
deciding whether to invoke the exclusionary rule.

Moreover, assuming that the NIT Warrant is not void *ab initio*, which it is not
for the reasons discussed above, the exclusionary rule is not an appropriate remedy
because the agents relied on the now-invalidated warrant in good faith, and sup-
pression provides no deterrent benefit. There is absolutely no evidence of deliberate,
reckless, or grossly negligent conduct on behalf of the law enforcement agents who
applied for the NIT warrant; to the contrary, the warrant application reflects the
agents' best efforts to comply with Rule 41(b) by seeking approval for the NIT war-
rant in the judicial district where the NIT would be deployed from Playpen's server,
with which the activating computers voluntarily communicated, and the information
it retrieved from the activating computers would be received. Since the location of the
activating computers was unknown at the time of NIT deployment, it was not un-
reasonable for the agents to conclude that the NIT deployment and receipt location
into which activating computers were communicating—the Eastern District of Vir-
ginia—represented the strongest known connection to the criminal activity under
investigation. That the agents' compliance efforts were subsequently found insuffi-
cient by this Court does not mean that it was objectively unreasonable for the agents
to have believed that the NIT warrant was properly issued, especially "given that
reasonable minds can differ as to the degree of Rule 41(b)'s flexibility in uncharted
territory." *Michaud*, 2016 WL 337263, at *7. *See also Massachusetts v. Sheppard*, 468

U.S. 981, 987-88 (1984) (stating that "the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate," even if that warrant "is subsequently determined to be invalid").

Finally, the court must consider whether "the benefits of deterrence outweigh the costs." *Herring*, 555 U.S. at 141. Suppression is an extreme remedy and the costs to society and the justice system of excluding evidence obtained from the NIT warrant—freeing defendants from prosecution for their crimes against children—are immense, yet suppression will have absolutely no deterrent effect on future police misconduct. On April 28, 2016, the Supreme Court approved an amendment to Rule 41(b) that clarifies the scope of a magistrate judge's authority to issue warrants, such as the NIT warrant, to remotely search computers located within or outside the issuing district if the computer's location has been concealed through technological means. Once this amendment becomes effective on December 1, 2016, the Rule 41(b) violation that the Court found to have occurred in this case will never occur again. Applying the exclusionary rule in this case will only punish law enforcement for a past mistake, not deter any future misconduct. *See Herring*, 555 U.S. at 141 (noting that the primary purpose of the exclusionary rule is "deterring Fourth Amendment violations in the future"). Because the "nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion," *Leon*, 468 U.S. at 922, suppression is not warranted here.

### 4.   The facts of this case warrant an exigent-circumstances exception to the application of the exclusionary rule.

The Supreme Court has recognized that the presumption that warrantless searches are unreasonable "may be overcome in some circumstances because '[t]he

ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "One well-recognized exception applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'" *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). Courts must evaluate "the totality of the circumstances" to determine whether exigencies justified a warrantless search. *Missouri v. McNeely*, 133 S. Ct. 1552, 1559 (2013).

In the Tenth Circuit, the *Aquino* test sets forth four requirements for a permissible warrantless entry: (1) there is clear evidence of probable cause for the criminal violation, (2) the crime is a serious one and one in which the destruction of evidence (or other purpose that frustrates legitimate law enforcement efforts) is likely, (3) the entry is limited in scope to the minimum intrusion necessary to prevent the destruction of evidence (or other frustrating purpose), and (4) the exigency is supported by clearly defined indicators that are not subject to police manipulation or abuse. *United States v. Aguirre*, No. 16-CR-0027-CVE, 2016 WL 1464574, at *11 (N.D. Okla. Apr. 14, 2016) (citing *United States v. Aquino*, 836 F.2d 1268, 1272 (10th Cir. 1988).

Here, the four requirements are all satisfied. First, clear evidence of probable cause existed regarding the Tor-based child pornography trafficking investigation. "Probable cause to search requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Hendrix*, 664 F.3d 1334, 1338 (10th Cir. 2011) (quoting *United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011). As discussed above and laid out more fully in the United States' Response (Doc. 34), the NIT warrant contained sufficient probable cause in light of the identity

13

encryption on the Tor network, Playpen's "hidden service" status, Playpen's landing page, the terms of Playpen's registration, and the vast amounts of child pornography contained within the site.

Second, the trafficking of child pornography is an uncontroversially serious crime. Playpen enabled the ongoing sexual abuse and exploitation of children committed by unidentified offenders against unidentified children. Deploying the NIT against Playpen's users was necessary to stop the abuse and exploitation and to identify and apprehend the abusers, as well as identify and rescue those children. As of early January 2016, use of the NIT in the nationwide investigation of Playpen had led to the identification or recovery from abuse of at least 26 child victims. *See Michaud*, No. 15-CR-5351-RJB (Doc. 109 at 8). The FBI also has identified at least 35 individuals who have been determined to be "hands on" child sexual offenders, and at least 17 individuals who have been determined to be producers of child pornography. *Id*. at 7-8. And the circumstances of the online trafficking on the Tor network indicated that the destruction and loss of evidence was likely. The criminal activity of accessing with intent to view, receipt, and distribution of child pornography was carried out through the encrypted network. As noted in the search warrant application, traditional investigative techniques were either unsuccessful or reasonably unlikely to succeed due to the encryption. The transmittal of the contraband and evidence of the identity of the user was only available while the user was online and accessing the website. Once the user was logged off, the information was no longer being transmitted through the relay nodes and the evidence of what was being transmitted and who was transmitting it was not present for capture. To interdict the criminal activity and capture evidence of the offense, other than the steps taken by law enforcement here, it would have been impossible to obtain a warrant in time

14

to capture the activity. When users might access the site for a matter of minutes or hours, issuing generalized warrants in every district across the country is logistically impossible. *See*, *e.g.*, *Cupp v. Murphy*, 412 U.S. 291, 296 (1973) (affirming use of warrantless search to prevent loss or destruction of "highly evanescent" evidence). Accordingly, the frustration of law enforcement efforts was likely under the circumstances of the defendant's criminal conduct.

Third, as stated above, the search was minimally intrusive since it sought to capture only information—his IP address—that the defendant was readily utilizeing through his Internet Service Provider ("ISP") every time he connected to the Internet or Tor network. Importantly, the defendant's IP address belonged to his ISP, not to him, and courts have held that a defendant lacks a reasonable expectation of privacy in his IP address. *See*, *e.g.*, *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007); *Michaud*, 2016 WL 337263, at *7 (lack of reasonable expectation of privacy does not change with the use of Tor); *United States v. Farrell*, No. CR15-029RAJ, 2016 WL 705197, at *2 (W.D. Wash. Feb. 23, 2016) (same). Before proceeding with a more invasive entry and search of the defendant's home and electronic devices, the government obtained a Rule 41 warrant issued in this district.

Finally, despite the court's order, the exigency that existed was not subject to police manipulation or abuse. In suppressing the NIT warrant, the court rejects an argument on exigent circumstances stating "the specific activity at issue was on-going only because the Government opted to keep the Playpen site operation while it employed the NIT. The Government cannot assert exigent circumstances when it had a hand in creating the emergency." Doc. 42 at 27. This assertion should be reconsidered in light of *Kentucky v. King*, specifically, law enforcement officers did not take any action that violated or threatened to violate the defendant's Fourth

Amendment rights. *King*, 563 U.S. 452, 462 (2011) ("Where . . . the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed."). Here, the exigent circumstances are to prevent the on-going child pornography violations by capturing the perpetrators and the agents complied with the Fourth Amendment. Actions that do not rise to constitutional violations or threats to violate constitutional rights, such as continuing to run the Playpen site, are not relevant to the *King* analysis. Furthermore, there was nothing else the agents could have done to comply with the various rule and statutory restrictions on warrants.

When confronted with the activity on the Playpen site, agents became aware that traffickers in child pornography were utilizing anonymization software to come and go as they pleased on an illicit website, accruing and distributing untold amounts of contraband. In that moment, the exigency was clear and present. Those who downloaded or distributed child pornography prior to the instant the NIT was deployed were getting away with heinous offenses. Agents worked quickly to attempt to capture the fleeting evidence of the crime being committed and identity of the perpetrator. They sought, in good faith, a NIT that was judicially authorized and in compliance with the Fourth Amendment's warrant requirements. As opposed to suppressing the evidence of the defendant's criminal activity, this Court should reconsider and determine that exigent circumstances provide an exception to the exclusionary rule and that the subsequent search warrant in this district remain.

CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court reconsider its order granting the defendant's motion to suppress evidence obtained from the NIT warrant.

Respectfully submitted,

DANNY C. WILLIAMS, SR.
United States Attorney


*/s/ Andrew J. Hofland*
Andrew J. Hofland, WI Bar #1065503
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1029
(918) 382-2700
andrew.hofland@usdoj.gov




**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of June, 2016, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for sealed filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

William Widell
*Counsel for Defendant*


*/s/ Andrew J. Hofland*
Andrew J. Hofland
Assistant United States Attorney

17

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

United States of America,

                          Plaintiff,

vs.                                         Case Number: 15-CR-182-JHP

Scott Fredrick Arterbury,

                          Defendant(s).

## AMENDED SCHEDULING ORDER

At the direction of James H. Payne, U.S. District Judge, it is hereby ordered that government's motion to reconsider (dkt #51) is hereby DENIED and the following schedule is set:

| | | |
|---|---|---|
| Pretrial conference: | 7-27-2016 | at 1:30 p.m. |
| Voir dire, jury instructions, and trial briefs due: | 8-8-2016 | |
| Jury Trial: | 8-16-2016 | at 9:30 a.m. |

        It is further ordered that any motions for continuance that could affect the seventy (70) day deadline for commencement of trial provided for by the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq, shall specify the provision(s) of that Act pursuant to which the movant contends the requested delay may be excluded in computing the seventy (70) day deadline, as well as the facts underlying the movant's contentions.

                                            Mark C. McCartt,
                                            Clerk of Court, United States District Court

                                            <u>s/P. Lynn</u>
                                            By: P. Lynn, Deputy Clerk